IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02831-PAB

CATHERINE WEAVER,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

**ORDER**
_____

This matter is before the Court on plaintiff Catherine Weaver's complaint [Docket No. 1], filed on October 31, 2011. Plaintiff seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On January 21, 2009, plaintiff applied for disability benefits under Title II and Title XVI of the Act. R. at 15. Plaintiff alleged that she had been disabled since December 31, 1999. *Id.* After an initial administrative denial of her claim, plaintiff received a hearing before an Administrative Law Judge ("ALJ") on July 7, 2010. *Id.* On

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

October 19, 2010, the ALJ issued a decision denying plaintiff's claim. *Id*. at 25.

The ALJ found that plaintiff had the following severe impairments: "affective disorder; anxiety disorders," R. at 18, and ruled that plaintiff had the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but with the following nonexertional limitations: inability to complete complex tasks and the inability to effectively interact with the general public." R. at 20. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE") and the Medical-Vocational Guidelines, 20 C.F.R. § 404, subpt. P, app. 2, the ALJ concluded that the claimant was not disabled as she was capable of performing past relevant work as well as other jobs existing in the national economy. R. at 24.

The Appeals Council denied plaintiff's request for review of this denial. R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the

evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Decision

Plaintiff raises four arguments in support of her appeal: that (1) the ALJ's finding regarding her RFC is not supported by substantial evidence; (2) the ALJ mischaracterized the nature of her prior relevant work and, as a result, erred in finding

that she can still perform that work; (3) the ALJ erred in applying the medical-vocational guidelines directly instead of soliciting testimony from a VE; and (4) the ALJ erred by failing to cite specific evidence in support of his finding that plaintiff does not have an impairment equal to one of the listed impairments.

### *1. Residual Functional Capacity*

Plaintiff argues that the ALJ's finding regarding her RFC is not supported by substantial evidence. Docket No. 9 at 11.

In addressing this argument, the Court is mindful that it may not "displace the agency's choice between two fairly conflicting views, even [if] the court would justifiably have made a difference choice had the matter been before it de novo." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal citations omitted).

First, plaintiff cites to a number of documents in the record that she argues show that she has had a "chronic mental disorder" since 1999.[2] Docket No. 9 at 12. This assertion, even if true, would not be sufficient for plaintiff to prevail on her appeal. As defendant argues, the issue is not whether plaintiff has had a chronic mental disorder for the past decade (an issue that defendant does not dispute), but instead, whether, before the date her insured status expired, plaintiff's impairments were so severe as to prevent her from engaging in any substantial gainful activity, and that those impairments persisted at that level of severity for at least one year. 42 U.S.C.

---

[2] For example, she points to evidence that she was briefly hospitalized in or around 1996, R. at 224; that, in 2006, she scored within the range of severe to extreme depression on the Zung scale, R. at 271; that, in 2006, she reported that she was "unable to function at work" and that one of her medications made her too sleepy to function, R. at 261; that, in 2007, Dr. Liester diagnosed her with major depression, R. at 321; and that she was in therapy regularly from 2007 through 2009, R. at 287-321.

§ 423(d)(1)(A); Docket No. 10 at 16-17.

The evidence that plaintiff cites establishes that she has a long history of depression, anxiety, bipolar disorder, and post-traumatic stress disorder. *See, e.g.*, R. at 261. It does not, however, show that the ALJ lacked a substantial basis for his RFC determination. On the contrary, some of the evidence plaintiff cites supports the ALJ's finding that, prior to 2008, she was able to control her symptoms effectively with medication. R. at 23. For example, plaintiff cites her May 23, 2007 phone call to Dr. Peter Clothier's office reporting that she was experiencing "extreme sleeplessness." R. at 249. However, in the same call she stated that she was "[o]n Lexapro and feeling comfortable." *Id*. Likewise, on January 17, 2006, the same day that she received a score on a Zung test consistent with severe depression, she reported that she was "[r]ecently married and feel[ing] more stable."[3]  R. at 270.

Second, plaintiff argues that the ALJ erred insofar as his reason for discounting plaintiff's testimony about her daily activities was that such activities "cannot be objectively verified with any reasonable degree of certainty." R. at 22. However, in the next sentence, he explains that even if he were to accept plaintiff's testimony on this point, the medical evidence would not permit him to attribute the entirety of her

---

[3] On this topic, the ALJ noted additional evidence that plaintiff does not address. For example, he noted that, in July 2007, plaintiff told Dr. Liester that her medications were helping her sleep, R. at 312, and that, in November 2007, she told Dr. Liester that she was "doing great." R. at 308. In addition, in August 2007, Dr. Liester found that plaintiff's mood was normal, she was sleeping well, her energy level and concentration were good, her appetite was stable, and her medication was helping with her anxiety. R. at 311. On January 16, 2008, Dr. Liester noted that plaintiff "[f]elt good through the holidays," her mood was normal, she was sleeping fine, her concentration was fine, and her anxiety level was low. R. at 306.

limitations to her medical condition, especially prior to her date last insured. *Id*. Thus, whether or not the ALJ's initial statement was in error, it did not affect his ultimate ruling and is not grounds for remand.

Finally, plaintiff argues that the ALJ improperly failed to address statements from her sister and her stepmother confirming that she is severely depressed and unable to do the simplest chores. Docket No. 9 at 13-14; R. at 183-84. It is true that the ALJ did not specifically mention these statement in making his RFC determination. R. at 20-23. However, these statements discuss plaintiff's condition as a child and in 2010 but do not specifically address her condition prior to her date last insured. *See* R. at 183-84. Thus, they do not establish that the ALJ's decision lacks substantial evidence.

The ALJ properly explained the weight that he accorded each medical opinion and stated his reasons for doing so, in accordance with the requirements of 20 C.F.R. § 404.1527(c)(2). He also considered the opinion of plaintiff's husband. R. at 23. In addition, he considered evidence that plaintiff had performed some work activities after the alleged onset of her disability. R. at 22. Specifically, he noted that plaintiff reported to Dr. Liester in October 2008 that she was no longer scheduling tours for a resort because the season was over. R. at 140, 294. The ALJ noted that plaintiff started a business in October 2008 selling antiques at a mall. R. at 293, 295. Finally, the ALJ noted that, when plaintiff applied for benefits in 2009, the daily activities she described were less restrictive than what she reported at the hearing, suggesting that her testimony at the hearing does not accurately represent her condition prior to the date last insured. R. at 21, 42-43, 166-73. This constitutes substantial evidence in support of the ALJ's decision. Even if the evidence that plaintiff cites could support a different

7

conclusion, the Court would not be permitted to reweigh the evidence and displace the ALJ's decision with its own.  *See Oldham v. Astrue*, 509 F.3d at 1258.

In sum, there is substantial evidence in the record to supporting the ALJ's finding regarding plaintiff's RFC.

### *2. Medical-Vocational Guidelines*

Plaintiff argues that the ALJ did not meet his burden at step five because he applied the medical-vocational guidelines directly and did not seek input from the VE, even though he found that plaintiff has nonexertional limitations.  Docket No. 9 at 19-23.

The medical-vocational guidelines contain grids that direct a determination of disability based on a claimant's residual functional capacity, age, education, and work experience.  20 C.F.R. § 404, subpt. P, app. 2.  An ALJ may rely conclusively on the grids if he finds, based on substantial evidence, that "1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level."  *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (internal citations omitted).  He may not do so where a claimant's nonexertional limitations restrict her ability to perform the "full range of jobs available" or "a substantial majority of the work" in the designated RFC category.  *Mitchell v. Astrue*, 2012 WL 4478369 (10th Cir. Oct. 1, 2012) (citing *Channel v. Heckler*, 747 F.2d 577, 583 (10th Cir. 1984)) (internal quotation marks omitted); *Evans v. Chater*, 55 F.3d 530 (10th Cir. 1995).

According to the Social Security Rules,

> These mental activities are generally required by competitive, remunerative, unskilled work:
> - Understanding, remembering, and carrying out simple instructions.
> - Making judgments that are commensurate with the functions of unskilled work–i.e., simple work-related decisions.
> - Responding appropriately to supervision, co-workers and usual work situations.
> - Dealing with changes in a routine work setting.
>
> A less than substantial loss of ability to perform any of the above basic work activities may or may not significantly erode the unskilled sedentary occupational base. The individual's remaining capacities must be assessed and a judgment made as to their effects on the unskilled occupational base considering the other vocational factors of age, education, and work experience. When an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource.

SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996); *see also* SSR 85-15, 1985 WL 56857, at *4 (1985) (stating that unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people").

The ALJ found that plaintiff has the RFC to perform work at all exertional levels (i.e. sedentary, light, medium, heavy, and very heavy); plaintiff does not dispute this finding. R. at 20. He also found that, although plaintiff "experiences difficulty in accepting instructions and respond [sic] appropriately to criticism from supervisors," R. at 19, an activity often necessary to unskilled work, this difficulty was not substantial enough to limit her RFC, which is only constrained by her inability to complete complex tasks and to interact with the general public. R. at 20. He further found that plaintiff's limitations in interacting with the general public and completing complex tasks "had little or no effect on the occupational base of unskilled work at all exertional levels" because the "occupational base of unskilled jobs at all exertional limitations would provide substantial vocational opportunity that would include jobs that would ordinarily involve

9

dealing primarily with objects, rather than with data or people (SSR-85-15)." R. at 24.

Plaintiff argues that the ALJ failed to cite the specific provision of SSR 85-15 on which he relied and that this invalidates his conclusion. Docket No. 9 at 23. Although the ALJ did not provide a page number, he quoted language from page four of the rule, stating that unskilled jobs tend to involve working with things rather than people. R. at 24. This indicates that he relied on SSR 85-15 in finding that plaintiff's nonexertional limitations do not significantly erode the occupational base of unskilled jobs that she is capable of performing. Although it may have been "useful" for the ALJ to consult with the VE on this issue, SSR 96-9p at *9, the Social Security Rules did not require him to do so.

Since the ALJ "supported his use of the grids with a discussion of [plaintiff's] mental impairment, its effect on job performance under SSR 85-15, and [her] continuing ability to perform a substantial majority of light unskilled work," it was permissible for him to rely on the grids. *See Mitchell v. Astrue*, 2012 WL 4478369, at *3; *see also* SSR 83-12, 1983 WL 31253, at *2 (1983) ("In some instances, the [erosion of the occupational base] will be so slight that it would clearly have little effect on the occupational base."); *Thompson*, 987 F.2d at 1488 ("The mere presence of a nonexertional impairment does not preclude reliance on the grids."); *Talbot v. Heckler*, 814 F.2d 1456, 1465 (10th Cir. 1987) ("Admittedly, a nonexertional impairment can have a negligible effect on the range of jobs available."); *Titsworth v. Astrue*, 2013 WL 75780, at *7 (N.D. Okla. Jan. 4, 2013) ("The Grids may be used when a claimant has nonexertional limitations when the claimant can perform a substantial majority of the work in the exertional category."); *Martinez v. Astrue*, No. 08-cv-01549-PAB, 2010 WL

1050017, at *7 (D. Colo. Mar. 17, 2010) (use of grids permissible where ALJ determined that plaintiff was capable of performing all unskilled jobs in the national economy in spite of her mental impairment and illiteracy).

In sum, the ALJ properly applied the grids at step five of his analysis.[4]

### 3. Listed Impairments

Plaintiff argues that the ALJ's decision should be overturned because he did not cite to record evidence in his step three analysis. Docket No. 9 at 8-11; R. at 18-19. She relies on the Tenth Circuit's holding in *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996), for the proposition that an ALJ is "required to discuss the evidence" at step three. Docket No. 9 at 9.

In *Clifton*, "the ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment." 79 F.3d at 1009. The court found that this "bare conclusion" was beyond judicial review and remanded the case with instructions to the ALJ to "set out his specific findings and his reasons for accepting or rejecting evidence at step three." *Id*. at 1009, 1010.

As the Tenth Circuit later explained, however, *Clifton* does not require reversal "where the ALJ's factually substantiated findings at steps four and five of the evaluation

---

[4] Plaintiff also argues that the ALJ erred at step four by failing to sufficiently develop evidence regarding her prior work and, as a result, erroneously found that she is still capable of performing this work. Docket No. 11 at 15; R. at 23-24. However, the ALJ's finding at step five, which the Court finds is based on substantial evidence, is sufficient to support a finding that plaintiff is not disabled and thus there is no need to consider plaintiff's argument regarding step four.

process alleviates *any* concern that a claimant might have been adjudged disabled at step three." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005). In *Fischer-Ross*, the ALJ did not cite specific evidence in his step-three analysis, but the Tenth Circuit found that his findings at step four and step five prevented a finding that plaintiff met one of the listed impairments. The court held that "the ALJ's confirmed findings at steps four and five of his analysis, coupled with indisputable aspects of the medical record, conclusively preclude Claimant's qualification under the listings at step three." *Id*. at 735. It further held that remand under these circumstances would "needlessly prolong[]" the administrative proceedings. *Id*. at 730.

To meet the criteria for listings 12.04 or 12.06, plaintiff had to show either marked restrictions in two of three functional categories (activities of daily living, social functioning, or concentration); a total inability to function outside her home; repeated episodes of decompensation; a risk of decompensation in case of any change to her environment or mental demands; or a history of being unable to function outside a highly supportive living arrangement for a period of one or more years. 20 C.F.R. § 404, subpt. P, app. 1. At step four, the ALJ found that plaintiff was able to control her depression and other anxiety disorders with medication, which permitted her to carry on certain work and household activities. R. at 20-23. This finding "conclusively precludes" a factfinder from determining that plaintiff had marked restrictions in two of the three functional categories listed above. *See Fischer-Ross*, 431 F.3d at 735. In addition, there is no evidence that plaintiff has experienced episodes of decompensation or otherwise satisfies the more severe criteria.

12

Thus, the ALJ's failure to cite specific evidence at step three is not grounds for remand.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is AFFIRMED.


DATED March 29, 2013.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge